UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20cr22 (1) DRL |
| LAMAR LUTEN, | |
| Defendant. | |

OPINION & ORDER

Lamar Luten requests compassionate release. The government opposes. The court generally "may not modify a term of imprisonment once it has been imposed," but may do so when "extraordinary and compelling reasons warrant" a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The commentary of U.S.S.G. § 1B1.13 can provide guidance, *see United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020), and release must satisfy the factors under 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021).

The court sentenced Mr. Luten in January 2021 to 151 months for three counts of aiding and abetting carjacking. He has served short of two years. He has a projected release date in nine years—January 6, 2031. FCI McKean's warden denied an administrative request for compassionate release. The government concedes that Mr. Luten exhausted his administrative remedies. *See United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021). Mr. Luten (age 26) says harsh prison conditions, post-COVID symptoms, and obesity are extraordinary and compelling reasons to warrant release. He mentions in passing only that his mother needs a caregiver because of her ailing health.

Mr. Luten hasn't presented compelling and extraordinary reasons for compassionate release. Foremost, as much as he says COVID-19 concerns him, he has previously contracted the coronavirus and largely recovered, save for headaches of little concern. He tested positive on March 25, 2021 and

quarantined asymptomatically at FCI McKean until his move from isolation on April 4, 2021. A standard quarantine is of little concern in today's world. Mr. Luten reported to medical staff that he also had COVID-19 in November 2020 while housed in county jail. No medical reports substantiate this event; but, if true, he has recovered twice from the coronavirus with little consequence.

He reported to medical staff in July 2021 that he was then experiencing some lingering chest pains, cough, shortness of breath, and occasional and temporary dizziness, but nothing indicates that such conditions were severe or extraordinary, or even persisted. To the contrary, he received ongoing medical care. Physicians ordered an electrocardiogram (EKG) and chest x-ray (CXR). The chest x-ray showed his lungs to be clear, with no acute cardiopulmonary disease. By September 2021, he reported "feeling well other than intermittent headaches." He denied any more chest pain or shortness of breath. He said ibuprofen addressed his headaches. He has since tested negative for COVID-19. His convalescence militates against a finding of extraordinary or compelling reasons for release.

Mr. Luten has natural antibodies it seems. He has not shown particular susceptibility to COVID-19 again today. Even if that existed, he has declined the vaccine that would likely confer additional protection, as a recent study showed "super immunity" from both vaccination and infection. He has not shown that vaccination would be medically ill-advised. A person has the right to ask questions and to refuse medical treatment, but in so doing he should not then complain of the risk the vaccine was designed to prevent when no doctor has said he shouldn't take it—particularly in the face of a pandemic. *See United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an extraordinary and compelling justification for release") (quotations omitted).

Mr. Luten mentions obesity but provides no support for why this constitutes an extraordinary or compelling reason for early release. At 5'11" tall and 260 pounds (at the time of the presentence report), he has a body mass index over 36. This qualifies as obese. Though obesity makes it more likely

for one to get severely ill from COVID-19, statistics show a vast majority of inmates are obese. Based on statistics alone, obesity is a more common condition than an extraordinary one, and the Bureau of Prisons is equipped to deal with such commonplace medical conditions. In addition, having recovered at least once from COVID-19, Mr. Luten has not demonstrated that obesity alone proves compelling for him. Having recovered at least once, the great likelihood is that he would once more.

Mr. Luten complains about harsh conditions at FCI McKean based on lockdowns, quarantining, social distancing, and fear of infection. The specter of infection isn't a compelling or extraordinary reason for early release. Nor are the efforts at prisoner safety. The Bureau of Prisons has been heroically undeterred in its efforts to combat the pandemic and has implemented several contagion-prevention protocols for inmate and staff safety—evolving as the pandemic has evolved. These protocols are to be encouraged, not deterred.

FCI McKean houses 1,028 inmates. Only two have COVID-19 today. Over 400 inmates have recovered in the past. None have died. There is no outbreak. Notwithstanding the rising trends in many parts of the country from the delta and omicron variants, FCI McKean remains a bastion of safer residence because of its prevention protocols, not despite them. "[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and inmates cannot expect the "amenities, conveniences and services of a good hotel," *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). The realities of the pandemic at FCI McKean are no worse than the outside world.

Mr. Luten last mentions his ailing mother. Though the court sympathizes with his mother's condition, Mr. Luten hasn't established that his mother lacks reasonable alternatives to care. At the time of the presentence report, she lived with her youngest child, so presumably with one who can assist her. What is more, the policy statement from the sentencing guidelines contemplates release relating to family circumstances regarding a defendant's children, spouse, or partner, but not for the care of an incapacitated parent. *See* U.S.S.G. § 1B1.13 app. n.1(C). The court heeds this policy guidance,

3

*see Gunn*, 980 F.3d at 1180-81, not least because of the analysis of the 18 U.S.C. § 3553(a) factors. Even so, Mr. Luten hasn't exhausted his administrative rights on this particular issue. *See* 18 U.S.C. § 3582(c)(1)(A). His letter to the warden mentions his coronavirus-related concerns, but not this one.

The sentencing factors also counsel against compassionate release today. *See* 18 U.S.C. § 3553(a). Mr. Luten's offenses were sophisticated and predatory, and demonstrably serious. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). The robberies and carjackings steadily became more violent, leaving one victim so frightened that he remained motionless on the ground long after the robbery had ended, one beaten with a firearm, and another injured so severely that he was hospitalized. These three offenses occurred over six weeks, though Mr. Luten remained on probation. His conduct reflected a persistent disregard of the law and danger to the public. *See* 18 U.S.C. §§ 3553(a)(2)(B), (a)(2)(C). He has a history of firearm-related crime, and violent crime in short sequence. His relapse to violence, and violence with firearms, and violence that grew more serious with each passing robbery, and his consequent high risk of recidivism, make compassionate release untenable. *See* 18 U.S.C. § 3553(a)(2). For these reasons primarily, but for all the reasons just announced a year ago [ECF 50] that on this record remain unmoved, early release is incompatible with § 3553(a).

Accordingly, the court DENIES the motion for compassionate release [ECF 89].

SO ORDERED.

January 7, 2022                 *s/ Damon R. Leichty*
                                                         Judge, United States District Court